v. Blatt, and I'll... Mr. Hector. Good morning, and may it please the court, I am Matthew Hector on behalf of Appellant Oliva. This case is before the court on an appeal from the final judgment in northern Illinois on a cross motion for summary judgment. There's three main issues up on appeal. The first one is whether a debt collector can assert the bona fide error defense under the FDCPA due to its reliance on case law. Second issue on appeal is whether that same reliance on case law entitles a debt collector to assert the bona fide error defense under 15 U.S.C. 1692 K sub c. Whether this court's ruling in sways v. Medlon Solutions is retroactively applied to all debt collectors or just those in Marion County. Turning to the first issue, I believe the Supreme Court's ruling in German v. Carlisle quite clearly lays out that a debt collector may not rely on a mistake of law or its interpretation of the requirements of the FDCPA when asserting the bona fide error defense under 15 U.S.C. 1692 K sub c. In this situation, Newsom, which was the controlling law at the time, was not a mandatory filing situation where they didn't have to file cases at the Daily Center. They could have filed cases at the satellite courthouses in Cook County as well, but chose not to do so. It's also worth noting that during the time that the Sways case was pending before this court, certainly the debt collectors were aware that there was a kind of a dark cloud over the Newsom ruling and that perhaps Newsom will be overturned, especially when the court granted the motion for rehearing. So as the bona fide error defense, it seems that this is not a clerical error. This is not someone who inadvertently accidentally filed a complaint in the wrong courthouse. This was a deliberate choice that this is the courthouse most convenient for, in this case, Blatt Hassett Miller, but any other debt collector also in Cook County. Certainly the courthouses that are closest to the consumer would be more convenient for those consumers. We're talking about high-volume, small claims debt collection cases where many of your defendants are poor or unemployed, elderly, many don't have cars. Getting to the loop can be a significant undertaking for someone. And turning to a safe harbor question, the reliance on Newsom there, the district court had equated it to reliance on the Consumer Financial Protection Board or the FTC's advisory opinions, but the language of the statute is clear that its reliance on the advisory opinion of the board. The statute does not speak to judicial rulings except to say that if a debt collector has relied on an advisory opinion, which is subsequently overruled by a court, that in that instance the safe harbor still applies. However, in this situation there was no applicable CFPB or FTC advisory opinion upon which the defendant was relying. It was solely based on their interpretation of Newsom and what it permitted. Finally, moving on to the Sway's opinion, that ruling did apply retroactively. Also, I believe that the results encouraged by the defendants in this case goes directly against the Supreme Court's rulings in James v. Georgia, where the court spent significant time discussing exactly why modified prospectivity, that is a ruling that is only retroactive as to the immediate litigants and not to any other similarly situated parties, is disfavored and disallowed in our system. Also, there have been six other cases that have been decided by the district court, at least six, since the district court ruled in this case. In all of those cases the district court has sided with the consumer and ruled against the same affirmative defenses asserted by Blatt, Hassell, Miller in this case. We believe that the weight of the district split is clearly on the side of the consumer here and would urge the court to reverse the district court in this case and follow the line of cases established by the other judges. And as one final note, I believe in their response the defendants also point to an issue that was not decided by the district court, but that would be whether Mr. Oliva's specific set of facts would give rise to him succeeding anyway. Certainly, it was not raised on appeal beyond the response brief. The district court had no occasion to rule on that issue and specifically said it was not ruling on that issue. Certainly, this appeal could be resolved and the case remanded back to the district court, and even if Mr. Oliva is unsuccessful, it would clarify three very important issues with regard to the FDCPA and its debt collectors beyond Marion County and throughout the circuit, if not the country. Regarding retroactivity, how far back does retroactivity reach? Well, I would say it reaches as far back as the statute of limitations on an FDCPA claim. So, in this context, one year. Certainly, during that time, the debt collectors were aware that there was a potentiality that Newsom would be overturned. I believe this is a case we have to submit a letter on. It was recently decided, despacio, where the district court specifically said that the debt collectors knew or should have known that there was that chance and proceeded at their own risk to the detriment of the consumer. Well, would that resurrect many cases that are already resolved? I don't believe so. I think that at this point, that really resurrects any matters from before. I also think, you know, we're talking about cases that generally are, the clock starts ticking at the filing date of the underlying debt collection lawsuit. If there's no further questions, I'll reserve some time. Thank you, Mr. Hector. Mr. May it please the court. Good morning, Your Honors. My name is David Hartzell. I represent the Eppley Blatt-Hassemiller. Your Honors, this case is based on a legal fiction, a fiction that the law was something other than what it was at the time that Blatt-Hassemiller filed this case in December 2013. And by the way, in December 2013, there was no dark cloud of any kind. The original Suez, and I don't know if it's Suez or Suez, but I'm going to call it Suez. The original Suez panel opinion had just issued two months earlier in October of 2013. So there's no dark cloud of any kind. Newsom had just been reaffirmed again by the original panel. The fact is, Newsom was the law. Blatt followed the law, and that's why Blatt's entitled to the error of law. The only error we made was not having the foresight or being able to foresee that 18 years later this court would overrule Newsom and impose a different interpretation. Now that, of course, is this court's prerogative. And Blatt has adjusted on a going-forward basis in terms of where these new, where these cases now have to be filed. And it's created, just as an aside, it has a nightmare. Nightmare. I don't think would understate it, Your Honor. There have, the, I can tell you that the transfer process is still ongoing. That this has, this, the effect of this has greatly disrupted the collection, the Chief Judge's collection court over there, and all these cases that have to be, now be transferred to these remote courthouses that don't have the access. There are thousands of cases where transfer orders have been entered, and the file hasn't even made it out to Skokie, or Bridgeview, or wherever. But that's what they have to deal with over there. This case, excuse me, they now have to do that anyway, I guess. That's what's happened. Newsom isn't really the issue. I'm sorry, that's probably, that may be why they first filed there, but I'm not quite sure exactly, when you think about so many transfers, that, is that transfer, just when somebody, I won't say mistakingly, or whatever, after Sue, or whatever we're calling it, has the, established the new rule, what, are people still filing in the wrong place, and they have to transfer them out? Is that the case of them now? No, sir. Absolutely not. And in the case... So all those are already filed then? Yes, sir. In the case of my client, the day after the Suez en banc decision entered, my client changed its procedures to make sure now that if the debtor lived in one of these sub-districts, that the lawsuit was filed in that sub-district. The second prong of that was we had to take all of these cases that had been filed at the Daly Center, where the debtor lived in and those cases had to be transferred by order of the County Circuit Court out to those outlying districts, and that is what has created, as Judge Bauer suggested, a nightmare for the court. And that process is still ongoing. In this case, Mr. Oliva's case, was dismissed within a week of the Suez decision being entered. So that was no longer being prosecuted, I guess. Right, because the you either got to transfer that case, or you can voluntarily dismiss it. In this case, it was dismissed. But in every other single instance, what Blatt-Hassemiller is doing is transferring those cases, and they are proceeding, if at all, to some degree, out in the outlying districts. But it has created quite a bit of consternation. Somebody's got to be in two places at once. Well, I don't know how many attorneys there are, but if there's that many cases, when you're... How many satellites are there, anyway? There are six municipal districts, including the first district, which is the Daly Center. Okay, so... But you are correct in this, sir. The Cook County Court has concentrated its resources at the Daly Center. That's where the interpreters are. That's where the infrastructure are. That's where the Consumer Help Desk is. And now they're faced with, do we have the resources to recreate that infrastructure and that help out in these remote courthouses? And like every other county in the country, they have their financial issues, and it's created a real problem for them. But going back to this case, this case is not at all like Germann. Not at all. Where the court held that the debt collector could not avail itself, that the defendant debt collector lawyer in that case could not claim bona fide error, where he was relying upon his own interpretation of the law. The underlying legal issue in Germann was far from being well settled. To the contrary, it was the subject of much dispute. The Supreme Court was rightly concerned about allowing somebody to use bona fide error on a legal issue where they were relying upon their own interpretation of the law or on the advice of private counsel. Not so here. The law here was clear. Newsom said, and I quote, in Illinois circuit courts constitute judicial districts under the plain meaning of the FDCPA. There was no interpreting to be done. There was no legal judgment to be brought to bear. As long as the consumer lived within Cook County, it was not a violation to file the suit at the Daly Center. And I just want to respond to something Mr. Hector said. He said, well, you didn't have to file it at the Daly Center. You could have chose to file it out in Skokie or Bridgeview or Markham, but that's really not the question. The question is not whether we had the option to do that, but whether we violated the FDCPA by filing it at the Daly Center, and clearly we did not. That's why Newsom has to be understood as a safe harbor, just like the other safe harbors that this court has created under the FDCPA, starting with the Bartlett case, Miller McCalla, Every. Treating Newsom as a safe harbor also aligns perfectly with the congressional intent as set forth in section 1692 K.E. to shield debt collectors who rely upon agency interpretations, where later changes in decisional law can transform lawful conduct into a violation. We don't need to rely here upon 1692 K.E., but it is preposterous to suggest that this court's decisions are not entitled to the same deference and should not provide the same protection as a non-binding agency opinion. It also aligns with this court's own jurisprudence, particularly in the court, K.O.R.T. case, where the court there equated the defendant's actions in following an agency's form to, quote, debt collectors who follow the safe harbor language drafted by this court. In court, K., they held that the debt collectors use of that form was not a mistake of law because, quote, any misinterpretation of misinterpretation of the law was done by the agency, not the debt collector. Just so here, Suez overruled Newsom and held that Newsom misinterpreted the law, but Blatt's reliance on Newsom, just as in court, was both reasonable and justified. I want to take a second about retroactivity, and I don't like reading this court's opinions back to it, but I think it's important, this quote is important. In retroactivity, it said, prospective overruling on reliance grounds is impermissible unless the law has been so well settled before the overruling that it had been unquestionably prudent for the community to rely upon the previous legal understanding. We submit to you that Newsom represented exactly that for lawyers filing debt collection cases in Cook County. Marion County, it's a Suez recognized that, that Newsom might not provide or could not provide the same basis for justifiable reliance by debt collectors in Marion County. The Suez Court itself drew that very distinction that we're making here. Likewise, for the Marion County debt collector, Suez said that, quote, a prior decision of one intermediate appellate court does not create the degree of certainty concerning an issue of federal law that would justify prospective only applications. But for lawyers filing collection cases in Cook County, Newsom created exactly, precisely that degree of certainty. For those lawyers, this wasn't just one intermediate appellate court. This was the court, the only court, and Newsom the only decision that mattered. This court could not have intended to open up a window of liability for these lawyers and leave them out there like sitting ducks. Plaintiff's counsel here has filed over a hundred of these cases, 28 against my client alone. All based, all alleged Suez violations in collection cases that were filed, in every case filed, and in most cases closed well before Suez issue. They need to be able to rely upon what this court says. It cannot be the case that we can only feel confident in the law and the 1% of the 1% of the cases that get decided by the Supreme Court. The fact is that this court usually has the last word and we have to be able to depend on what it says and that we will not be penalized if the court later changes its mind. So let me wrap this up by saying that no matter how you look at it, bonafide error, safe harbor, retroactivity, it all comes down to this. Was it reasonable and yes or has to be yes? Thank you. Thank you, Mr. Hartzell. Mr. Hector? I'd like to start with Mr. Hartzell's last point as to the window of liability here. It's a very small window. It's a one-year window of liability. Debt collectors in Cook County had 18 years to file downtown and profit from that by tending to fall judgments from consumers who were unable to come and defend their own cases in many situations. A one-year window of liability is relatively small compared to the 18-year span in which debt collectors have been able to sort of ride roughshod over consumers in Cook County. That wouldn't particularly apply to the facts of this case. Mr. Oliva, arguably, the convenience factor might well have been the First Municipal District. Which it may be for Mr. Oliva, but I think... Yeah, no, I'm just saying the facts of this case suggest a different story than... Correct. However, I believe that as a broader principle... No, I'm not challenging it. You know, it's interesting that we spend so much time listening to Mr. Hartzell talking about the administrative nightmare in Cook County because that's certainly not really relevant to this case either, and to the application of Swayze and Newsom with regards to the FDCPA. It's not really relevant either for you to say that, in effect, this is kind of a retaliatory thing for the benefits that other collectors had for 18 years. Well, correct. I was just merely... I was really trying to stress that one point. That's why I'm mentioning it. Correct, right. They both have limited relevance, I think, to the overall point, which is that the Supreme Court's ruling in German, I believe, does foreclose their ability to claim the safe harbor... I'm sorry, safe harbor, the bona fide area defense, primarily because there was a legal choice here. A law firm chose to act in a certain way. They read the law and interpreted it and acted based on that interpretation. I don't see how it's not a legal judgment. As to court, court, I believe, first of all, it involves someone following an agency's ruling and directive, and it put that specific debt collector in a very strange catch-22, which is not the case here. The safe harbor provision is quite clear that it's specific to advisory opinions of the Bureau. Given this situation with your case, it immediately dismissed it. Now, what's the benefit, other than maybe attorney's fees? I believe the overall benefit, you mean to Mr. Oliva specifically? Yeah. I believe the benefit there is that in Illinois, they still had another year in which to file the case, or through the statute of limitations period, whichever one was longer. So the benefit would be on a prevent that suit from being refiled. Well, you're saying that case, this case that they dismissed can be refiled? I believe it may be too late now, Your Honor, but yes, it could have been. Is it or isn't it? Well, it was able to be refiled. It would be a year from the dismissal date or through the statute of limitations period, whichever is longer. Generally, these cases are filed pretty close to the end of the statute of limitations period. So I would imagine that at this point in time, it could no longer be refiled. Would that make it smooth? I don't believe so. I think there was a distinct risk during that one-year period, and certainly... What should your client benefit? What should you get out of this? I think that's a question of the extent of damages and, you know, for the district court to determine, but it'd be up to $1,000 in statutory damages and his attorney's fees under the statute. Statutory damages and my reason. Thank you. Thank you, Mr. Hudson.